Alex de la Portilla v. Robert Acevedo Mr. Ronsetti. Yes, yes. Good morning, Your Honor. May it please the court. Launching right into this, the dispositive factor in this case is the nature of the chief of police of the city of Miami. I have to ask from the beginning, I find this interesting because it seems that Mr. Carollo's 2016 case already resolves this matter, at least at the motion to dismiss stage. What is, what are you saying is factually or legally distinguishable from our decision in that case compared to here? It's actually a fascinating case for us, Your Honor, because in that case, this court held actually there was a failure to state a claim about, quote, whistleblowing regarding corruption. There was a failure to state a claim on that. But the dispositive issues are the nature of the role between a city manager, Carollo, and the chief of police here, and the narrow holding of that Carollo case, because Carollo was a situation where it was undisputed regarding whether the speech was about a public concern. And there was no argument whatsoever about Pickering. And those are critical issues here. And I can start with Pickering. Again, getting to the nature of the chief of police. The chief of police is responsible under law with the prevention, control, and suppression of crime. That's kind of unsurprising, but that's the code of Miami-Dade, of the city of Miami. And then the city enters into an MOU saying, except when it comes loosely termed to corruption of his bosses, that goes to the FBI or the FDLE. And in Carollo, there was a provision as well that carved out the city manager's responsibility for supervision and direction of the administration of all departments, but not city boards or agencies. So that was a carve out in terms of the scope of his responsibilities. And it appears that the MOU here did the same thing. The MOU is limited expressly to investigations, Your Honor. And we laid this out in our brief. The reso is very, very short. And all that it says is that investigations shall go to these outside departments, the FBI or the FDLE. It also says in the whereabouts clause, by the way, that the purpose of this is to have more transparency. It's to have better investigations. So the chief of police who's responsible for the entire police department cannot say, well, now you've carved off entirely everything having to do not only with the somehow the city manager learns about it, will it be reported to the FBI. That simply makes no sense, Your Honor. It's not a reasonable interpretation. There's nothing in that resolution that says the word reporting. And the court shouldn't accept an unreasonable interpretation. It should accept the most reasonable interpretation, which is actually completely in line with the facts of this case. Well, but again, for Carollo, the decision there, I think the court said, and correct me if I'm wrong, that you can have a description in a document that says these are your job responsibilities, but it's the factual finding and discovery that susses out what the real responsibilities are. So my concern is that a motion to dismiss stage, why isn't it too premature to reach those conclusions when that discovery has not been done? Because the circumstances based upon this complaint, based upon this speech act, this memorandum, and based upon the law, which is very, very broad, it was very unclear in Carollo, frankly, about it was clear enough for corruption, but it wasn't clear about election violation. Mr. Renzetti. Yes, sir. Maybe I'm missing something here. The claim here is First Amendment retaliation. Yes, Your Honor. And your point, as I understand it, isn't whether they, this isn't a question of a pleading standard. This is a question of qualified immunity. Absolutely, Your Honor. And so the question really is whether their complaint not only alleges a claim of First Amendment violation, that it was a constitutional violation, that every reasonable official in their position would have known that it is a First Amendment violation, right? Absolutely. That is something, that immunity question has to be decided at the earliest possible stage. It can be raised at any time, including the pleading stage. And even if we assume that the police chief was speaking as a private citizen, that would still require a pickering balance inquiry. And unless you've got a case on all fours, it's going to be very difficult for any plaintiff to establish a constitutional violation that gets over that second part of qualified immunity. That's your argument, is it? Absolutely, Your Honor. And Your Honor's decisions in Leslie on the pickering balancing issue involving a category of employee that had policymaking is squarely on point, where this court reversed on a motion to dismiss and mandated a dismissal because the... We've said it's particularly difficult to overcome qualified immunity in the First Amendment context, right? Over and over, Your Honor. And the gains... Are we debating then whether it's clearly established that if the pickering standard, that it's a private citizen engaged in an issue involving public concern, are we debating whether that is clearly established? Because that's what I understand the second part. And Carollo already establishes that the question is whether he was acting as a private citizen and whether or not his comments involved a matter of public concern. In Carollo, they stipulated a way they never argued the pickering balancing test. That wasn't that issue. Neither was public concern. And the facts here are different from Carollo. You're not arguing, are you, that the pickering balance itself, what that inquiry is, wasn't clearly established? No, Your Honor. The question is whether the fact that it's weighed in the balance to establish a constitutional violation here on these facts was so clearly established that every official in your client's position would have known it's a constitutional violation. Absolutely, Your Honor. There has to be obvious clarity under the HOPE standard. That's what they travel on. They basically admit there's no analogous case. Obvious clarity. Yes, Your Honor. On the pickering balancing, I'd like you to address two allegations in the complaint. So first, the complaint alleges that the city commissioners have no authority to manage the NPD or otherwise dictate NPD decisions. So I read that to say that the city commissioners don't have anything to do with NPD as a policymaking entity. And then also the complaint alleges that this memorandum, the speech, quote, did not disrupt the functioning of the NPD or the city of Miami. So those are factual allegations in the complaint that seem like they would be relevant for pickering balancing. So what do you say about those? Two things, Your Honor. Although the commission doesn't have responsibility and direct control over the police department, it certainly, as the ultimate legislative body of the city, has policymaking ability. Where would we get that? Pardon me? From the charter, Your Honor. So we would read the charter and say that as a matter of the charter, would we say this factual allegation is wrong? Are you saying this factual allegation is correct, but there's a footnote about the policymaking for the... The latter, Your Honor. It's correct in as much as the city manager is responsible for the chief of police. The chief of police does have delegated policymaking authority, broad policy authority. But the city legislature could pass a law and say, this is how you're supposed to operate. And we have to take the facts as pleaded and accept them, right? Only the facts, Your Honor. Right. But the law is whatever it is. And the city charter is law, right? Absolutely, Your Honor. What do you say about the second allegation? It did not disrupt the functioning of the NPD or the city of Miami? The memorandum. That's what the complaint says. Right. And the law says, Your Honor, that we can accept that. But the law says that the governmental body doesn't have to await disruption. There's several cases that say that. It can be concerned that it might disrupt. That it might disrupt, Your Honor. And there was clearly... I mean, let's look at this memorandum. It was a memorandum written... Well, before you look to the memorandum, I guess... Usually, so like in Green v. Finkelstein, a case on this that I worked on and basically every other case that I found in the First Amendment context, they're all at summary judgment. Because at some point, some decision maker said, I was concerned about disruption. Right? I mean, what are we supposed to look at on this record? And how do we say that? That the allegation is that there was no disruption. Where do we find any evidence that anybody was concerned about disruption? Well, three places, Your Honor. First, in the complaint itself, it's a little bit illogical and conflicts to a degree. Because there was disruption to the extent there was an actual out-and-out battle between the commission and its chief of police who had delegated powers. And a huge part of this is the functionality of the government. That's why the categorical policymaking position is so important under Pickering. You can read it in the memorandum and in the complaint. He alleges public meetings where these people were battling with one another. And in the suspension memorandum, which we say has been incorporated by reference, there's also part of the charge was he was harming morale. So that is in the record by our position, Your Honor. I see my brief time is up. Thank you, Your Honor. Mr. Partnoy. Good morning, Your Honors. May it please the Court, on behalf of Manager Noriega, I have a brief amount of time and I'm going to just zero in on a few standalone issues that are for the city manager, not for the commissioners, starting with the fact that the city manager is not the final decision-maker as to the termination, which is the impetus of the complaint, but rather the manager was the final decision-maker as to the suspension. And the qualified immunity analysis that was performed by the trial court, in its opinion, conflated suspension and termination, conflated all of the, quote, individual defendants, and there was no separate fair notice analysis done for the city manager. And had the court performed that, you would have turned to the Bell case, which this court issued three months prior to the manager's suspension of the chief of police, in which this court said, we consider, need only consider whether the suspension with pay from law enforcement activities constituted an adverse action. Like the district court, our answer is no. Let me ask you a question. Yes. So, I get your argument on that. My concern is that in this case, the suspension was merely a prelude to the termination. So, in Bell, the suspension was a separate thing. And the question there was, is suspending someone with pay not part of a termination, just part of an investigation is what they were doing there. But here, wasn't the suspension just basically the first step in the termination? So, like, the city manager was like, we are going to terminate you. Before we can terminate you, we have to suspend you. No, because the city manager under the charter doesn't have the ability to terminate. Oh, no, I know. It only has the ability to suspend. And then, like Bell, there needs to be a full investigation or hearing, which is conducted by the final decision makers, the commission, who then, on a 5-0 unanimous basis, proceeded to terminate this. The manager never has the ability to terminate. And so, Bell would have given him, with Bell being there, there's no fair notice that merely suspending for five days would constitute an adverse retaliatory act for First Amendment because they, the manager, has no ability to terminate, only to suspend. Thank you, Mr. Pertnow. Thank you very much, Your Honors. Ms. Chee. Good morning. May it please the Court. My name is Heaven Chee, and with me at counsel table is Marcos Jimenez. We're from Leon, Cosco of Jimenez, and we represent the Apolli Hubert Art Acevedo. Your Honors, I would like to start from where my friend across the bench if you can tell me what case, what case law would have put the commissioners on fair notice that it was clearly established that firing the chief in this circumstance would be First Amendment retaliation and that the pickering balance would weigh in the chief's favor such that any reasonable official would know that. Your Honor, the Carollo v. Borea case is the best case. It is the case that goes through the progeny of both Garcetti and Lane, and it discusses Aikens, Walker, Bryson. And Bryson does actually include a pickering question. Bryson addresses the same fundamental First Amendment right to be free from retaliation when private citizens speak on a terminated or otherwise facing adverse employment action by their colleagues. And Bryson includes a pickering question because even though the chief, sorry, the captain in Bryson was complaining about his chief's misappropriation of evidence, he went around and he told everyone who would listen within his police department. And it was actually that that tipped the pickering scale. So Bryson actually addresses pickering, and it is part of the progeny that is cited over and over both by the court below, by Carollo v. Borea, by Aikens. These cases appear repeatedly because they are this circuit's clearly established law that creates a broad statement of principle. It seems like their argument on this is that, okay, they accept that broad statement of principle. They accept they can't fire whistleblowers, but then they want to do a caveat to that and say, but maybe there are certain positions where it's not clear we might be able to fire them for whistleblowing, right? So they want to say, okay, if you're the chief of police and you report, you know, you could use the facts of Lane v. Franks. Lane v. Franks, someone testifies in front of a jury about, federal jury about federal corruption. I think they would say, okay, well, we accept that for the run-of-the-mill people, we couldn't fire you for testifying in front of a federal grand jury or a federal jury. But if you're the chief of police, we can fire you for that under the pickering balancing test. That seems to be what they would say. What do you say about that? So two issues and one, your honor, is just on the pickering specific caveat. And that's why we briefed and discussed in length in our brief, the Gerard case that came out in 2024. And we know that temporally that could not have given fair notice. That's not why we cite it. That case post dated the facts in this case, but this circuit analyzed this exact carve-out that not only did there need to be a clearly established law, but it needed to be so specific to also include notice of the pickering balancing test. So this court has actually recently addressed that. That's why we discussed 2024, the 2024 case in Gerard. But to answer your question, your honor, on what is the difference between the chief of police versus a more run-of-the-mill government employee, Carollo versus Borja answers that in her honor, aptly noted the very, very strong, if not a near identical analogs between our case before you today and the commissioner, the same party in this case, Commissioner Joy Carollo's plaintiff side case in Carollo versus Borja, because there the defendants made that same argument that he is in a supervisory role. And so therefore there's a implicit rule or an implicit expectation that he will start whistleblowing and it's part and parcel of his job. That in Carollo versus Borja, his responsibilities included, he was responsible to the city council for the administration of quote, all city affairs. Here in our case, my client, the chief of police was responsible for the immediate and direct supervision of the Miami police department. His, our client's responsibilities are arguably narrower. It is narrower to his division, the Miami police department. Whereas in the Carollo versus Borja case, he had purview over all city affairs. And even there, this circuit found that there was not an all-inclusive duty for him to police. Let me ask you this. So Garcetti says, look, the point of the pickering balance, as I understand it here, is you've got to allege, your client has to allege, that there's no adequate justification, facts that would establish there's no adequate justification for treating your client differently from any other member of the public. Do you agree with that? That that's what Garcetti says? Yes, your honor. All right. And so then the question is, it seems to me, we have to ask whether the statement impairs discipline by superiors or harmony among co-workers, has a detrimental close working relationship for which personal loyalty or confidence are necessary, or impedes the performance of the speaker's duties or interferes with regular operation of the enterprise. We've got to say from these facts that every officer would know, looking at those kinds of facts, as alleged, every officer would know the balance outweighs the city's interest, right? Yes, your honor. And what facts make that so clearly established that every official would have known it? Your honor, at this stage, the dismissal stage, the record is the complaint. In this complaint, there is an absence of any allegations that would give the city commissioners or the manager any thought that they have reason to believe that his whistleblowing speech would upset the harmony of the Miami Police Department. So in balance, we have our client's interest in his free speech and whistleblowing on corruption, all of the contextual allegations of how the suspension memo was pretext. He was being pressured to weaponize Miami Police Department. All of the allegations in our complaint are on one end. And on the other end, there's an absolute absence of any allegations that would weigh in favor of the government. So that, your honor, is the balance. There is nothing to counterweight all of the allegations in this complaint at this stage. Even in Carollo, though, to be fair, it seems like the court did parse out comments that could be protected under the First Amendment and therefore, I think, does support a clearly established law that if a person engages in this kind of behavior as a private citizen on a matter of public concern, there is a First Amendment protection there. But then in Carollo, the court parsed out certain comments, including statements to law enforcement that were not covered. And we do have, even in the memo or report, it appears to me, some comments that were to law enforcement, which arguably are not covered. So it could be, following Carollo, that some of the comments are covered and some of them are not. And to the extent the district court made any error, it was in not parsing out which of the comments were at this stage covered. What is your response to that? Yes, your honor. Of course, on a de novo review, the court is entitled to look at the allegations in the complaint and the whistleblower memorandum itself. Our position is that as the plaintiff, we were entitled to all reasonable inferences to be drawn in our favor. And of course, because we have pleaded them, we believe that every allegation in this complaint leads the court to a reasonable inference that there was misconduct at the Miami Police Department and that our client wanted to bring attention to it in order to promote not only the harmony and the order of the Miami Police Department over which he had responsibility, but also to protect the citizens of the people of Miami. And I understand that. My question, and I think in terms of the notice issue that has been raised a couple of times, it does appear in the report there were comments or allegations made to law enforcement that arguably aren't covered in terms of the First Amendment. And therefore, it does seem that there is some credence to the lack of notice there. So that's what I wanted you to specifically address. The lack of notice of whether or not there was a mix in the allegations, some of which may actually turn in favor of the government. For example, his reports to law enforcement, FBI regarding his concerns related to corruption. Can we say that those comments were covered? And the fact that the whistleblower memorandum was forwarded to the FBI and the state, the Miami-Dade State Attorney's Office, Your Honor. Yes, I mean, that we would argue, of course, that that was covered protected speech. But I understand that there is a, you know, there is a world in which there is a reasonable, there is an inference to the opposite, but that what the reporting to those two law of his merits part of his First Amendment claim, which is that those were evidence or those are allegations at evidence, his acting as a private citizen. He was going beyond what the my friends across the bench call his superiors. So that was this clear going around his job responsibilities around his chain of command. So in that sense, Your Honor, we believe that those actually do fall within his First Amendment protected speech. But of course, you know, we take your point, Your Honor, that there are ways that this court may review the entirety of the record and find that there is a balance for some. But if we just, if we find that just some of his comments were protected First Amendment comments, then that's, that's all we really need to do to affirm the district court. We don't necessarily have to go through the complaint and address each comment separately, right? Yes, Your Honor. That's what we would argue is that we believe that every allegation supports his protected, his First Amendment claim. But of course, you know, taking Her Honor's point, we also believe that we would win by the growth preponderance of the allegations in the complaint, even if some are not protected. Go back to the balancing issue. So I've read the complaint a couple of times. And so it looks like the allegations from your perspective that might go, I mean, and maybe there's broader allegations. That's why I'm asking the question. But you allege that the city commissioners don't have any authority to manage the NPD or to dictate NPD decisions. So that suggests, for example, that he's not like within the city's chain of command. And then you allege that, that you had, in fact, make this allegation that it did not disrupt the functioning of the NPD or the city of Miami for him to make these statements. Is there anything else in your complaint that you think goes to the bickering balance besides those two things? Well, the, the way that he both signs on and opens his whistleblower complaint, his whistleblower memo, Your Honor, I think bear repeating, which is that he says specifically that he wants to do this in order to protect and serve the people of the Miami Police Department and also the citizens of Miami. So although he was originally intending for this memorandum to reach only the mayor, the city manager, and then also the FBI and the state attorney's office, it did get leaked to the press. But it is manifest on its face that this was a whistleblower memorandum in order to protect the public interest. I don't know that that's responsive to mine. So I get that it's whistleblower. I guess I'm trying to say, okay, he's, I'm just going to give the whole thing to you and say, look, it's all speech by a citizen on a matter of public concern. The question for me is sort of the back half of the test is what would, what would let someone know that even, you know, let's, let me give you a hypothetical. Let's say that there's the White House communications director. And the White House communications director decides that, you know, that person is going to go on a blog and start blogging about other stuff and just says all this outrageous stuff on a blog. It seems to me that someone at the White House could say, look, that's absolutely as a citizen on a matter of public concern. But under no circumstances am I going to be held liable if I fire the White House communications director because of stuff that they said in their private capacity, right? Why isn't the same thing? Well, I think, why can't the same thing be said about a police chief? It's like, you're the chief of police for this city and you're not allowed to just go off and just say stuff about, you know, the city council and about them committing crimes and things like that. You're not allowed to just go off and say that. We can fire you for that, even if it is a matter of public concern, even if you are speaking as a private citizen. We just can't have someone like the police chief do that. Why, what, what in your complaint suggests that that's not the right reasoning? That, that they don't, in other words, have to wait in order to, to see if there would be a fallout because he is a, I think this is, this is part of the progeny of the spokesperson role. Could they reasonably believe that notwithstanding he's speaking as a private citizen on a matter of public concern, that under the Pickering balance, they would still be justified in firing him? He's a policymaker. He heads a paramilitary unit where discipline is, is really important. This has the potential to have a detrimental impact on the city. Where is it so clearly, where are the facts so clear here that every official, every member of the commission would know that firing him in this circumstance violates the First Amendment? Well, Your Honor, in the Bates case, which I think is the closest analog case to whether or not someone is a, a spokesperson for the city or for the commissioners, that is clearly distinguishable because that, in that instance, that employee directed, directly reported to the governor. So the chief of police here does not directly report to the commissioners. He is not their spokesperson. He is only very broadly, perhaps the quote, face of law enforcement in the city of Miami as the common person may understand it, but his purview under the charter was limited to just the direction and supervision of the Miami police department. There is nothing about him in the charter that allows him to supervise the general lawliness of all high ranking city officials. In fact, that was taken away from him per the resolution. He is not the spokesperson for the city. That's the city manager who reports to the mayor. That is a spokesperson for the city. So on the record and in the city charter, I would argue that Your Honors would have to look at what his exact role was. And I understand that as the chief of police and as a high ranking official, sometimes those roles expand. And that is addressed by Correo v. Borea. And that's also addressed by Alves, which is analyzed within Correo v. Borea. Correo disclaimed any balancing, right? Well, Correo does not have to address balancing, Your Honor. That's true. Yes. And that's what we're really, I mean, for me at least, balancing is part of it, right? Right. Well, and Your Honor, I would also say that their chief case that they have cited is not a dismissal case. They don't have to establish that a case protected them. You have to establish that a case would have, or obvious clarity, one of the buckets of immunity that every one of them would have been on notice that what they were doing violated the First Amendment, right? Yes, Your Honor. And I would say that the second way that we could clearly establish law in this circuit, the way of establishing the broad statement of principle, that is what we are doing here. It is not a case on all fours. It's not the first kind of the way of establishing law within this circuit. We are saying that the broad statement of principle exists and to ask us to find a case that is so clear that it has another chief of police. Here's the problem with that argument. It seems to me we've said it's particularly difficult to overcome qualified immunity in the First Amendment context and that only the extraordinary case will survive. And you seem to be saying you can't hold us to that kind of standard. No, Your Honor. We understand that this court has said that. But we also argue that if you were to grant qualified immunity to the defendants here in this case, it would be effectively collapsing the first and second ways of clearly establishing law because this would create this effective subclass of public employees. The subclass ironically being the higher you are within the government, the less First Amendment rights you have such that you can virtually never report whistleblowing. All right. We've let you go over. I think we understand your case. We've got two minutes left for Mr. Renzetti. Thank you, Your Honor. So I'm going to ask you, let's assume that the court, and this is just an assumption, finds in your favor on the ground that your clients lack notice. What language do you need from this court in a case to provide you with that notice so that this situation does not happen again? What do you need us to write or someone to write to provide that clearly established notice? What should the language say? I'm not quite sure, Your Honor, because on qualified immunity— The answer to that is pretty simple, isn't it? If we were to find that these facts were enough to allege a constitutional violation, that would provide clear net notice in the future, even if we found that it wasn't clearly established before we said so. Well, that's true on analogous facts, and that's how qualified—  So, and perhaps the chief is, I didn't understand him to answer my question, which is what do you need, what does the language need to say in the opinion? I believe you'd say that on these facts, we found that there is a constitutional violation. However, the law was not so clearly established that was crystal clear, clear with obvious clarity to these commissioners and so forth. And if there's a subsequent case, now the court has stated this is where the line is drawn in the law. Yeah, but what is the fact that's missing here? I mean, I take the, I think opposing counsel made a good point, which is like, we can't have, it's not like unclear just because, you know, there's not a case about a police chief, and there's not, you know, we're going to have like a case about a fire chief, and then a case about like a city manager, and then a case about the assistant to the city manager. And like, at some point, we have all these cases saying that whistleblowing is protected by the First Amendment. Yeah. Isn't that enough? I have a couple of responses. First of all, whistleblowing under their line of cases is a situation when someone reports outside of the chain of command, not an internal memorandum to their superiors. Okay, so that, yeah, at that point. Right. So, I would suggest that the court should define more particularly rather than simply saying whistleblowing, because every employee will say, and we have a whole line of cases that we've cited, like King and Moss and Batts, where employees were complaining about interference and saying, it's impossible for me to be a good ambulance driver, for instance, and people are going to die because of that. And they'd say that they were whistleblowers, but in fact, it was part of their responsibilities. I think it has to be made clear what that means. That was super easy in Carollo, because it was clearly outside of the duties. Here, we have someone who's a police chief, who's responsible for policing, so, and he's responsible for running the police force. That's everything that's memorandum. And reporting as a policymaker to the commission. That's, that's right, Your Honor. No, I'm sorry. That's the disposition. He alleges in the complaint that he doesn't report to the commission, though. That's the thing. He says in the complaint that, let's see, he says that the city commissioners have no authority to manage the NPD or otherwise dictate NPD decisions. He, and neither does any employee in that city report to that commission. Only their staffs report to them. But they're a legislative body. They're like Congress. They dictate what policy is, and they've delegated, through their laws, policy to him. That's why, as a policymaker, the case is dispositive. They can't point to a single case where there was a policymaker, where qualified immunity didn't apply. Your Honor, reversed and remanded, mandated the dismissal in the Leslie case. And Shahar, and Shahar didn't survive. And Batts, it didn't survive. Can I ask you, you said you had several responses to my question. I just want to make sure that you have time to give me the additional responses. You started by saying that the memo was perhaps not speech on a public concern. But I wasn't sure, though. I mean, my question was, what is it specific about this case besides the fact that he, I guess, do we need a case? Do you think we need a case saying that the police chief is, you can't fire the police chief for whistleblowing, you can't fire the fire chief for whistleblowing? Like, what do you need exactly? Is that the way the law is supposed to develop? I think your holding, Your Honor, would be straight along the lines of Leslie, that this was a policymaker. And your point is that it's up in the air whether policymakers can be fired for a speech that they make as a private citizen. It is. That's precisely what Leslie said. Leslie even surveyed the law. There hasn't been any law in this circuit that we could find. They certainly haven't. They who have the burden haven't cited any case law in that regard. And they've taken the position that this would be an unfortunate situation where people who are extremely high in responsibilities would have very little First Amendment protection. That's what the law is. The case law specifically says that very thing. Now, there are, and this is noted in Batts, there are other ways. There's a whistleblower statute. They're suing under a whistleblower statute. So they'll have a claim. They just don't have a First Amendment claim because that makes this court intervene between the highest levels of the city of Miami, its legislative body, its ultimate decision-making body, and the person in charge of all their police force who's responsible for operating it and who's supposed to be following their policies as set forth in law, as set forth in their decision. And as set forth in the MOU, which he was forced to abide by. So it seems to me it could be very well that at the end of the day, Mr. Acevedo loses. After summary judgment, after trial, but we're here on 12b-6, and it seems like you actually identified some questions of fact that would merit additional fact-finding. It's really not a question of fact, Your Honor, because we're here on qualified immunity. Did that memorandum, which says we want greater transparency about enforcing- Qualified immunity issues are resolved at summary judgment too, right? After some discovery. But they're also resolved at the earliest possible- They're resolved, 12b-6, they're resolved summary judgment. So it will be resolved. The question is whether or not the record is complete enough at this very early stage to make that determination. And the district court found that it did. And so that's the challenge that I have with your position. Let me just respond to that, Your Honor. This is an issue of law, First Amendment protection. The resolution can be read by this court just as it could be read by another court. And the interpretation of a piece of legislation like that should be an issue of law. And if there's- I wrote an opinion for our court just a few months ago where a district court said, I think we ought to wait till the summary judgment stage to resolve the qualified immunity defense and not do it at this early stage, at pleading stage. And we vacated and remanded within days of oral argument because that's just legal error. To the extent there's confusion about the memorandum, that's in favor of our clients. Howard, they're not- They're trying to run the city government. How are they supposed to be on fair notice because they put out that memorandum? Now, somehow- Let's talk about what Judge Abudu was asking about. Yes, Your Honor. Does it matter that this is at the pleading stage? No, Your Honor. It matters to an extent, but the record on the pleadings is clear. It's their burden. We're talking about issues of law. You have the memorandum. All the facts that they have to allege have to clearly establish the constitutional violation, right? And that is an issue of law. And in Leslie, which Your Honor decided, in the Zenn Group, which Your Honor decided not two years ago on the pleadings, the cases went on- We've gone over it. It's an interesting case. Thank you, Your Honor. Mr. Croyo is an endless source of business for us. We'll move to our last case.